IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AARON LITTLE FRENCH,  *
      Plaintiff,
                                      *

   v.                                     CIVIL ACTION NO. CCB-08-2299
                                      *

WARDEN, et al.,
      Defendants.  *
                                   ******

## **MEMORANDUM**

On September 3, 2008, the court received correspondence from plaintiff Aaron Little French seeking injunctive relief concerning mail procedures at the North Branch Correctional Institution ("NBCI"). The court directed plaintiff to supplement his complaint and on October 10, 2008, the court received plaintiff's supplement. Paper Nos. 2 and 3. Plaintiff alleges that his outgoing legal mail has been tampered with. Paper No. 3. He seeks injunctive relief, compensatory and punitive damages. *Id.*

Defendants filed a Motion to Dismiss, or in the Alternative for Summary Judgment. Paper No. 26. Plaintiff was granted five extensions of time over a nine-month period and has failed to respond.[1] Paper Nos. 29-39. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2009). For the reasons stated below, the dispositive motion filed by defendants, treated as a motion for summary judgment, will be granted.

## **Background**

---

[1] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on June 4, 2009, plaintiff was notified that defendants had filed a dispositive motion, the granting of which could result in the dismissal of his action. Paper No. 27. Plaintiff was also informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the court. *Id.*

1

French is assigned to the Special Management Housing Unit ("SMU") at NBCI. According to French, inmates assigned to SMU are required to give their outgoing mail to tier or wing officers on the midnight shift. The outgoing mail is then taken to an undisclosed location and sorted into boxes of outgoing mail, medical slips, and housing unit manager requests. Mail is then picked up from the compound by mailroom staff. French states that SMU officers are not trained to handle mail and the mail is "mishandled." Paper Nos. 1 and 3.

On August 6, 2008, French requested to have legal mail sent out certified by his case manager. It appears this request was denied. *Id.*

French further claims that lawsuits sent to the District Court of Maryland for Allegany County, Circuit Court for Baltimore City, Maryland, and this court did not reach their destinations. He states that after inquiry he received letters from the aforementioned courts indicating they had not received his lawsuits. He also states that a Petition for Writ of Certiorari to the United States Supreme Court was not received. He states that as he did not receive notice of a ruling on his motion for leave to proceed in form pauperis this demonstrates that the Supreme Court did not receive his petition. He also states that motions mailed to the Maryland Court of Special Appeals were not received. Plaintiff states, as proof, that he received notice his cases were dismissed sua sponte by that court. Paper No. 3.

Plaintiff further states he did not exhaust his administrative remedies because "prison officials have not made the prison ARP (Administrative Remedy Procedure) available." Paper No. 3. He also states that "certain mailings to administrators are also failing to reach the intended prison officials." He concludes that he therefore could not exhaust administrative remedies while housed at NBCI. *Id.*

Defendants aver that indigent prisoners' mail at NBCI is picked up from each inmate's cell and placed in the Housing Unit Manager's office by officers working all three shifts. The Housing Unit Manager delivers the mail to the mail room where it is secured. If the Housing Unit Manager is unavailable, the mail is placed in the collection box on the compound and then delivered to the mail room where it is secured. Paper No. 26, Ex. 2. Tier officers collect mail and other forms such as inmate requests, administrative remedy requests, and commissary paperwork from the SMU during the nighttime informal count. The mail is then placed into designated destination boxes at the front of the wing if applicable. All other outgoing institution mail and conventional mail is bagged and placed in the United States Mail Box located on the north side of the NBCI compound. *Id*., p. 51. A log of outgoing mail for indigent inmates is maintained by the mail room. The log does not record to whom the mail was addressed. The mail logs demonstrate that plaintiff regularly sends mail. *Id*., p. 4-50. Defendants aver that a search of the institutional records reveal plaintiff made no complaints regarding mail between January 2008 and June 3, 2009. *Id,* p. 2.

Defendants Werner, Watson, Ryan, Spiker and Whetstone each aver that plaintiff has not made them aware of concerns regarding mail collection or tampering. *Id*. and Paper No. 28. Case Manager Hoffman avers that plaintiff filed an informal complaint on August 1, 2008, requesting he receive authorization to send certified mail. Hoffman spoke with plaintiff on August 6, 2008, and provided him certified mail slips which plaintiff would have to submit for approval by the housing unit manager. Hoffman does not recall plaintiff completing the certified mail slips for authorization.[2] *Id*., p. 54.

---

[2] Plaintiff's initial letter complaint is attached to a letter from the NBCI mailroom dated August 25, 2008, ostensibly

**Standard of Review**

Fed. R. Civ. P. 56(c) provides that summary judgment:

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to....the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*,

---

to plaintiff which states "The Mailroom will need a copy from each Court stating their Legal Correspondence has to

477 U.S. 317, 323-24 (1986)).

## Analysis

**A.     Respondeat Superior**

Plaintiff's allegations against Warden Rowley are based solely upon the doctrine of *respondeat superior*. The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983). Accordingly, plaintiff's claims against Defendant Rowley shall be dismissed.

**B.     Failure to Exhaust Administrative Remedies**

The court must next examine defendants' assertion that plaintiff's case should be dismissed in its entirety due to plaintiff's failure to exhaust available administrative remedies. The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to plaintiff's allegations. His complaint "must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA,

---

be Certified with a Return Receipt." Paper No. 1.

or that defendants have forfeited their right to raise non-exhaustion as a defense." *Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Id.* at 530; *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review); *see e.g.*, *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated appears to be the first of three steps in the Administrative Remedy Procedure ("ARP") process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner has ten calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). *See* Chase, 286 F.Supp.2d at 529 n.10; *see* also Md. Code. Ann., Corr. Servs. §§ 10-201 to 210.

Plaintiff concedes that he did not even begin the administrative process. Paper No. 3. He points to irregularities in the administrative process and baldly states that "certain mailings to

administrators are also failing to reach the intended prison official." *Id*. There is no evidence in this case that plaintiff sought and was denied an administrative remedy form for the complaints alleged here. Nor is there an allegation or evidence that he completed an administrative remedy request and submitted it to prison staff, but the request was never acted upon or delivered to the proper official. Rather, plaintiff unilaterally decided he would not participate in the administrative remedy process. Accordingly, his claims are subject to dismissal for failure to exhaust administrative remedies. Unlike the circumstances in *Taylor v. Barnett*, 105 F.Supp.2d 483, 486 (E.D. Va. 2000), prison officials do not appear to have frustrated plaintiff's attempts at exhaustion; instead, plaintiff through his own actions failed to initiate his administrative remedies.

## Conclusion

Defendants' unopposed motion to dismiss or for summary judgment will be granted. A separate order follows.


 March 17, 2010                                              _____/s/_____
Date                                                         Catherine C. Blake
                                                             United States District Judge